Good morning, Your Honours. Emmanuel Nyong'o for Mr. Musateri. This is also a Notice of Appeal of a Frivolous Finding, as well as Notice of Appeal of a Denial of Asylum itself. And I do note that this issue was discussed a little bit earlier, so there's a little bit of preamble before I begin. But I do have a case from the Ninth Circuit from last year that does address the difference between an Adverse Credibility Finding and a Frivolous Finding. Mostly related to the burden of proof and the fact that one is the Respondent's burden, the other one is the Government's burden, and that an Adverse Credibility Finding is preponderance of the evidence, which is a very low standard. However, for a Frivolous Finding, it's more likely than not, which is a much higher standard. And this case is Koepke v. Holder. It was decided just last year by this Court, and it relied almost exclusively on another case decided by the Court that was published in, I believe, 2005. And that was the Ahir v. Mukasey. It's 2008, I'm sorry. And it's 527 F3rd 912. And it says that I'm reading from Koepke, and it says here that Additionally, the Government must prove that it's more likely than not that the applicant filed a frivolous filing application, whereas negative credibility determination need only be supported by substantial evidence, which might consist of as little as one specific and content reason. And this is important because in this case, in the Katka case, we had a situation where a gentleman from Nepal submitted a clearly fraudulent article from a newspaper that he, along with a newspaper editor, conspired to put in the paper about his problems with the Maoist rebels. And the State Department brought somebody to come testify about how this was a fabrication. They brought the actual archive version of the article to show that that article was never – his article was never in a newspaper. And he actually came and accepted the fact that his article was not in a newspaper. So this – we had a clear fabrication, and the Court still held that it was not enough for a frivolous finding for two reasons. One, because it was not the only evidence in the case. Even if it was submitted to both sides of the claim, there were other evidence from which they could infer that all the evidence in the case. Secondly, they also – he testified that he was not aware of the fact that this was, in fact, fabricated by somebody else. And the Court said that if it's plausible that he was not aware of it, then the fact he was not fully aware of the fabrication by itself could lead somebody to believe that he did not do it deliberately. So I do think there's not enough evidence in this case for the frivolous finding, for the simple reason that the document we're talking about is a medical record. And the medical record does have the petitioner's name, and it does have enough information about her. However, somewhere in the body of the paper letter, it says something about being a young man. And the petitioner testified that she was not aware of the fact he said that, or she would have corrected it, or she would have corrected the people who submitted it, and that she'd – Well, there were several different errors in the medical report, right? The age, the gender, the date of the treatment, all were inconsistent with her version of what happened to her. And as a result, she recanted or she admitted at the hearing that this medical report wasn't relevant to her injuries. So she said, you know, I guess this really doesn't help me, and I therefore am not going to use it in support of my petition. Isn't that what happened? Well, Your Honor, partly you're right, but not quite. She didn't deny that it was her. She merely said it was possible that they included somebody else's information in her record, and I think that's an important distinction. She say prepared her story that she told. Oh, she prepared her own story. There is no allegation that somebody else cheated her. The only issue is whether or not the documents submitted along with the application itself related to her, and she said that she asked somebody to send documents to her. She speaks some English. She speaks some English. What is her native language? She speaks Swahili, Your Honor. It's a dialect of Swahili. Swahili is over in East Africa, isn't it?  She's from Congo. Oh, she's from Congo. Yes, Your Honor. What's the language? She says she's from Congo, but she has a Tanzania passport. That is correct, Your Honor. Swahili is the language in Tanzania? Well, Swahili is one of those languages that's a little difficult to define. It's pidgin Arabic, basically. Precisely. There are different dialects of it, and so different countries have different versions of it, and I addressed this issue in a brief, you know, a little bit because there was some question whether or not the interpreter himself understood her dialect, and there was a lot of errors the interpreter made about her date of birth and about when she said she meant two weeks, and the interpreter translated it as two years, and so things like that sort of gave the impression, at least for me, I was not a trial attorney, that there were some problems understanding the interpreter, and I did raise some of those issues with the board, and I guess I'm raising issues again here. But really, I think, Your Honor, what it comes down to is that there are two things we're talking about here. One is the adverse credibility finding, which I do believe is not supported by the evidence because most of the credibility findings by the IJ were done by speculating what he believed. He believed that the Tanzanian passport could be real, but there's no evidence for him to believe that since the petitioner herself admits that she got the documents through fraudulent means to attempt to enter the United States, and we have several cases, Shabby INSs from 2000, 220 F3rd 1062, that say that I'm using fraudulent documents to enter the United States. It's not a basis to deny adverse credibility for the simple reason many people who are running away from trouble ordinarily forge documents to enter the United States. So there are a couple other issues, but I'll reserve time to do my rebuttal. That's fine. Thank you. May it please the Court. Ada Mosk on behalf of the Attorney General. Because the evidence does not compel finding Ms. Mukete credible, and she filed a for her – she submitted a document that she said she knew was fraudulent, the Court should deny the petition for review. Before this Court, Ms. Mukete argues that the immigration judge's – excuse me – adverse credibility finding is speculative, but it is far from speculative. The immigration judge identified specific inconsistencies in her testimony concerning very basic biographical information, and the reason he focused on the biography was because she did have a passport from Tanzania and because she presented a birth certificate to the asylum officer, which was subsequently she admitted was not – was fraudulent. So the immigration judge clearly focused in on identity as a central element of her claim. In addition to the discrepancies or the inconsistencies concerning biographical information, the immigration judge also noted that her testimony could not be reconciled with a single piece of paper that she submitted to support her past persecution claim, and that was the medical documentation. The discrepancies there are not simply related to gender, as the Court has already noted. The injuries that are laid out there are completely inconsistent with what Ms. Mukete testified she suffered, and the story is – can't be reconciled with the document. Ms. Mukete testified or claimed that she – her husband was abducted in February of 2000. She remained home for two weeks, walked for two days, spent one month, I believe, in Burundi, and then entered the refugee camp, entering in April of 2000, and the only time she saw – sought medical assistance was when she entered the refugee camp in April. Well, that's – that can't be reconciled with the medical documentation that she submitted that refers to June of 2000. So the immigration judge's adverse credibility determination was far from speculative. It was based on specific inconsistencies in the record and the discrepancies between her testimony and – I don't have any bright-line case that draws a line between the kind of false testimony that comes into these cases, sometimes in asylum claims, and the kind of false testimony where they lose on credibility but doesn't amount to a conspicuously fraudulent scheme of trying to evade responsibility for the loss of credibility. But, see, we're getting – I can understand why you want to crack down on these fraudulent claims, but we have a lot of case law that sort of, with a wink and a nod, says it's okay to lie a little bit to get into the country, but then after you get here you're supposed to tell the truth in your asylum claim. Now, she comes in with a Tanzania passport. It's probably – or possibly bogus, but it's – on its face it looks good. In fact, it cleared – she got a visa to come into the – on this passport. Now, what's wrong with sending her back on that same passport to Tanzania and not give her this frivolous stigma that will haunt her the rest of her life? Well, the immigration judge's – I'm sorry. The immigration judge's frivolousness finding was not based on the passport. He – in his – in his decision, he recognizes that often people who are fleeing use fraudulent passports. The passport was significant because it opens questions about whether – who she was, given that she – Well, yet we still don't know who she really is. That's certainly what the immigration judge found. The frivolousness finding was actually based on her submission of the medical – the medical document that she testified she was not authentic. And it wasn't a surprise to her. I mean, she presented this document before the asylum officer during the interview, and the asylum officer noted discrepancies. But she – but Ms. Muketa nevertheless presented the same document to the immigration court and was then more seriously questioned about the discrepancies between the document and her testimony. And her explanations concerning the discrepancies simply discompounded the immigration judge's concerns. She at times said that she – well, she didn't speak English very well at that time, but the numbers – the dates were all written in numerical fashion. So her ability to comprehend the written English language was really not an explanation for why the dates on her medical – the date on her medical documentation was completely inconsistent with what her testimony was. And that's the basis for the frivolousness finding. Before this Court – That she submitted a – she knowingly submitted a – A document. A medical document that she also knew was false. Correct. Right. That – and it was material – it relates to – Is that what he – is that what the I.J. said? Yes, Your Honor. Well, he says two things. He says either she reviewed the document and knew it was false and presented it to the immigration court knowing that it was false, or during her testimony she lied and said that she didn't – I'm sorry. She said that she did review the document and confirmed its authenticity, and yet when presented with the inconsistency said that she didn't know that the document was not authentic. So he said either way she – whatever she – whichever story you believe, either way she presented a fabric – a material fabrication to the immigration court. She either knew that the document was false and it is material to her claim of past persecution, or she didn't know that the document was false but testified that she had confirmed the authenticity of all her information, and that was material because, obviously, if she had not – if she had admitted that she had not confirmed the authenticity of the evidence that she was presenting, there would be a whole series of questions that the immigration judge and the Department of Homeland Security would question her about. How was she warned about the consequences of a frivolous application? Ms. Mukata hasn't alleged that she didn't receive sufficient notice, but here she submitted – I believe that there was an oral notice that the immigration judge gave her as well as – in fact, I know that there was an oral notice that the immigration judge gave her. Excuse me? Yes. It is with the Court's indulgence. I believe the notice is at 106 and 107 of the administrative record, and I believe there may be a written notice as well at AR 103, and that's above and beyond what's in her asylum application. So when I read the I.J.'s decision, he does point – do you have it there? I guess it would be page 19 of his decision or the administrative record at 58. That's the page I'm looking at. Yes. He does identify the documents. You're right. It says it's inconsistent and incompatible with basically her story. And then he goes on to say, Therefore, either the Respondent was not telling the truth when she represented to the Court that she was competent in English and had carefully reviewed all the documentation she submitted to the Court, or she is telling the truth that she upon the Court. In either event, I find that the Respondent has testified falsely before the Court and has therefore knowingly made a frivolous application for asylum. How can either one of those statements be substantial evidence to support the knowing intentional? The fact that she didn't understand English? Well, no. The record shows that there was some question about her ability to speak English. And the other one, if she was telling the truth, all it amounts to is an inconsistency. Well, I would say that the latter is the easier one. I mean, she testified she knew that the document was false. And it is material to her claim because it is the only evidence that she presented of past persecution. The alternative, I agree, is a more difficult response. But the immigration judge essentially was finding that she testified that she had reviewed all the information and she was confident that it was accurate. And indeed, this particular document, the asylum officer had questioned her about. So she knew that there were discrepancies with regard to this particular document and nevertheless presented it to the immigration judge confirming that it was true, that it was for the truth of what she was asserting, her claim of past persecution. If that wasn't true, if her testimony that she had not confirmed the document was untrue, then that's material. I mean, that's the reason the immigration judge would consider the document was because she's given assurances that the document is authentic. So those are the sort of alternative findings that the immigration judge made because in either case her story to the immigration court was untrue and she knew it was untrue. There's no way she could have, either, in either situation, there's no way she wouldn't have known that she was either submitting a document that she knew was false or she knew that she hadn't actually reviewed the document and assured herself of its authenticity. What's the IG's thinking about making a frivolous finding? Is he required to say, you know, I'm going to make, I'm, I'm, I'm required, I'm going to, it all looks here like you filed an intentionally false document with the intent of trying to persuade me to grant you relief, and this appears to qualify for a frivolousness finding. What do you have to say? Is he required to do that? The, again, the Board's decisions in Y.L. and B.Y. are after this, the immigration judge's decision here, but in those decisions the Board has found that he doesn't have to. That it is, I think what they called is, it's good practice for an immigration judge to do that, but it's not required. And I'm, I'm fairly certain here that the immigration judge specifically warned her of the consequences of filing a frivolous asylum application. I'm sorry, but the question. But was that at the onset of the hearing or was it? I believe it was at the onset of the hearing. You know, after you heard all this testimony, he began to, you know, look a little suspicious.  I believe that it was at the onset of the hearing that he gave her the frivolousness. But in the Board's decisions, again, subsequent to the immigration judge's decision here, the Board hasn't found, and nor has this Court, found that the immigration judge has to stop proceedings and say, I'm about to find that you filed a frivolous application. This is your opportunity to either withdraw the application or explain to me why it's not frivolous. What the law requires and what the Board has required is for the immigration judge to give the individual an opportunity to address the discrepancies. And Ms. Mukerte certainly had numerous opportunities to address the discrepancies between her documents and her testimony. So unless the Court has any other questions, for those reasons and the reasons set forth in our brief, we ask that the Court deny the petition for review. Thank you. Thank you. Thank you. Good morning, again, Justice. For the record, my client is Ms. Mutateri Nnamukese. That's the Attorney General, or the old Attorney General, that is. But I do have an answer for the couple of questions the Court had. The first one is what the Court was required to do. And I'm quoting from this Court's case law. So this is from Ahear V. Holder. And I have it here. And it says here, this is 527F3rd at 917. It says, I.J. also erred by not informing CADCA that he was considering making a frivolous finding or otherwise giving CADCA sufficient opportunity to account for any of the alleged discrepancies and impossibilities in the record, other than a few that supported the government's suspicions that the newspaper article was fabricated. It says, see Ahear, 527F3rd of 917. So the I.J. was required to give notice to the petitioner that he plans to find a fraudulent finding. Now, that decision, that decision post-date is after. It's from 2010, Your Honor. That's why I didn't address it. But it does. At the time he made this decision, there wasn't a lot of cases addressed of frivolous finding because it was somewhat new. So in my brief, I sort of pointed out the case where they found them, but not a case where they didn't find it because I couldn't find any cases that found frivolous application. The cases that found it were cases where clearly somebody admits that there was some fabrication. And very seldom is it found when there's some speculation that it's possible something is wrong. And there was a question the Court had earlier about whether or not Ms. Materia admitted the record was false. And she did not. And this is on AR page 151. And there's a question and answer where the Court asks Ms. Materia. And it says here on line 1, excuse me, on line 3. It says, Now you testified the only time you received medical treatment was in April of 2000. But why did you give the asylum officer a record from the Kasuru Hospital dated June 20, 2000? She said the document was sent to me. And she said, The document is fraudulent, isn't it, ma'am? She said, I'm not sure about that because I did send Josh, I believe that's relative to the hospital, to give me that document. See? So she never admitted that she filed the document fraudulently. Well, she also admitted that the injuries that she reported and the injuries that were reported on the medical document were completely different. And she couldn't explain that, correct? That is correct. But I think, Your Honor, it does go back to the earlier question. If she didn't understand English, it's possible that she couldn't. The document itself is very, isn't it, record. It's quite a detailed, long record. It has several notations. How about the inconsistencies in the ages of the children, the spelling of one daughter's name, the inconsistencies in the dates of her marriage? I mean, all those are, your explanation is that it's just a language problem? Well, Your Honor, I believe that actually goes to the heart of the issue, whether or not she would only make errors and things like that have nothing to do with the claim at all. The spelling of a child's name, L-I-S-C, S-A or L-I-C-E-R, will appear to be something minor that has absolutely nothing to do with the heart of the claim itself. And so the only way she would make an error like that would be, one, if she didn't prepare properly to come to court. That is, whoever prepared her application, her lawyer, didn't spend time with her to review the documentation. Those kind of errors, what I would consider attorney errors, not even impugned on her because there are so basic things like the date and something that has nothing to do with the claim at all. But again, those issues are not here before the court. But I do note that that would not be grounds to deny an asylum application when there's no other evidence that she's lying. And I have another case from the Ninth Circuit that addressed this particular issue. And this is the published case also from 2004. This is called, it's 393 F. 3rd, 907. It's Yehmani Berhevi Ashcroft. And it addresses this particular issue where the document is submitted that is false. And it says here that it does not, I'm reading from page 4 of mine. It says it does not follow from this holding, however, that the converse is necessarily true. That is, that the use of one allegedly fraudulent document that may go to the heart of an asylum claim automatically determinates it for an adverse credibility finding, especially when there's no indication of finding by the IG that the petitioner knew the document was fraudulent. It says, although the use of a fraudulent document may, considering the totality of the record, lend support to an adverse credibility finding, Yehmani Berhevi's submission of a fraudulent document alone is not substantial evidence that she lost credibility. And this addresses the issue where there's clearly a medical record that was submitted that the petitioner admits was not his. But he also said, I asked somebody to get something for me. They got something for me, and I did the best I could. We have to understand these are war zones, and the records, getting records from these places are not easy. And sometimes somebody might request somebody to get something for them, and they'll bring it. And they'll rely on it. And in this case, I think the attorney should have done a better job of going through the records with the petitioner. But that's not before the court. But I do think the record here does not compel a finding that there was any frivolous. Thank you. Thank you, Your Honor. We appreciate your arguments, counsel. The matter is submitted.
judges: O'grady, Goodwin, Paez